IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LAVELL BONE,**<br>　　**Movant,** | **CRIMINAL NO.**<br>**1:08-CR-0263-RWS-GGB** |
| 　　**v.** | **CIVIL ACTION NO.**<br>**1:12-CV-03824-RWS-GGB** |
| **UNITED STATES OF AMERICA,**<br>　　**Respondent.** | **MOTION TO VACATE**<br>**28 U.S.C. § 2255** |

## FINAL REPORT AND RECOMMENDATION

Lavell Bone ("Bone" or Movant") has filed a motion to vacate sentence under 28 U.S.C. § 2255 [Doc. 105]. Movant seeks to challenge the constitutionality of his 461-month sentence that was imposed on April 22, 2010 [Doc. 80], following his jury trial and the guilty verdict that was returned on December 11, 2009. Presently before the Court for consideration are: (1) Movant's § 2255 motion to vacate [Doc. 105]; (2) the United States of America's (hereinafter "Government") response to Movant's motion to vacate [Doc. 113]; and (3) Movant's reply to the Government's response [Doc. 115].

## I.     BACKGROUND

Bone was charged in a four-count indictment, charging violations of 18 U.S.C. § 2113 (bank robbery by force or violence), 18 U.S.C. § 1951 (interference with commerce by threat or violence), and two counts of 18 U.S.C. § 924(c) (using and carrying a firearm during a crime of violence).  (Doc. 9).  Count One charged that Bone robbed a Suntrust Bank.  Count Three charged that Bone robbed a Mrs. Winner's restaurant.  Counts Two and Four charged that Bone used and carried a firearm during and in relationship to each of the robberies charged in Counts One and Three.

On the day that Bone was arrested for the bank robbery, FBI agents searched the home of Bone's aunt, Tamatha Bone, pursuant to her consent.  Bone moved to suppress the evidence found during that search, and I held a hearing on the motion to suppress. (Doc. 28).  The district court adopted my Report and Recommendation and denied the Motion to Suppress.  (Doc. 64).

Bone was convicted by a jury and was sentenced to a 461-month total sentence, consisting of 77-month concurrent sentences on the robbery counts and 84-month and 300-month mandatory consecutive sentences on the firearms counts. (Doc. 80).   Bone filed a direct appeal in which he argued, *inter alia*, that the district court improperly denied his motion to suppress and the district court improperly

2

considered Bone's declaration of sovereignty at sentencing. The Court of Appeals affirmed Bone's conviction and sentence on July 11, 2011. (Doc. 99). The United States Supreme Court denied Bone's petition for writ of certiorari on November 7, 2011. (Doc. 102). On October 22, 2012, Bone filed this pending motion under 28 U.S.C. § 2255. (Doc. 105).

Additional facts are discussed in context below.

## II. STANDARD OF REVIEW

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962); see generally United States v. Hayman, 342 U.S. 205 (1952). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Bowen v. Johnston, 306 U.S. 19, 27 (1939).

3

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see Long v. United States, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988). As discussed below, the motion and record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.

## III.   DISCUSSION

In the current motion, Bone argues (1) that his Fourth Amendment rights were violated by the search to which Tamatha Bone consented; (2) that the district court improperly penalized Bone at sentencing for papers that Bone filed with the court; and (3) Bone was denied effective assistance of counsel. Each of these claims is discussed below.

### A.   **Bone's Fourth Amendment Claim was or could have been raised in his direct appeal and is therefore not properly raised in his § 2255 motion.**.

In his first ground, Bone argues that additional facts that could have been raised in the hearing on his motion to suppress would have resulted in his motion to suppress being granted. Specifically, Bone argues that Tamatha Bone's name was

4

not on the lease of the apartment that was searched; therefore, she did not have the right to consent to the search of the apartment. (Doc. 105 at 4).

Bone argued in his direct appeal that the district court erred in denying his motion to suppress. He may not relitigate his motion to suppress in this § 2255 motion. See United States v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000). He is not entitled to raise new arguments in support of his unsuccessful motion to suppress. Propst v. United States, Crim. No. 1:08-CR-187-CAP-LTW, 2012 WL 4363721, at *3 (N.D. Ga. Aug. 28, 2012) (citing Nyhuis and holding that "Movant cannot repackage and relitigate that claim [in his motion to suppress] under § 2255.").

For these reasons, Ground One is without merit.

**B.    Bone's Claim that the district court penalized Bone for certain papers that he filed with the Court was or could have been raised in his direct appeal and is therefore not properly raised in his § 2255 motion.**

Bone's second claim similarly was addressed by the Court of Appeals. Bone claims that the district court denied his motion for a downward departure because he filed various "trust" documents at his sentencing. (Doc. 105 at 5). At sentencing, Bone filed some nonsensical documents that purported to make the district judge a trustee of a trust. Bone then asserted that the charges should be dismissed because of this trust. (Doc. 90 at 25). In continuing with the sentencing, the district court stated,

5

" . . . you took a huge step back when you stepped up and filed these things. . . . [T]he fact that you had a need to come in and declare your sovereignty today and that you're not bound by the laws . . . is not a good sign." (Doc. 90 at 31).

Bone argued on direct appeal that the district court improperly considered these documents in denying Bone a downward variance from the advisory guidelines range, in violation of his First Amendment rights. The Court of Appeals rejected this argument. (Doc. 99 at 8-9). For this reason, this court may not reconsider that claim in this motion. Nyhuis, 211 F.3d at 1343.

### C.  Bone was not denied effective assistance of counsel.

Bone argues that his counsel was ineffective in the following ways: (1) counsel failed to investigate the name on the lease for Tamatha Bone's apartment; (2) counsel failed to present evidence that Bone had actually taken the ATM keys that were found in Tamatha Bone's apartment from a car, and the keys did not come from the money bag from the bank; and (3) counsel failed to present evidence at sentencing that Bone had assisted a prison guard who had been attacked by another prisoner. (Doc. 105 at 7, 17-18).

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010). "An

6

ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466 U.S. at 687). To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Additionally, to establish prejudice, a petitioner must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

In reviewing whether counsel's performance was deficient, the court gives particular deference to counsel's decisions on matters of trial strategy. Perez v. United States, 435 F. App'x 820, 823 (11th Cir. 2011) (citing Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)); see also Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are

7

virtually unchallengeable."). "'Judicial scrutiny of counsel's performance must be highly deferential,' and courts must avoid second-guessing counsel's performance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" Chandler, 218 F.3d at 1314 (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).

Bone claims that an FBI agent lied when he testified at the suppression hearing that Tamatha Bone's name was on the lease of the apartment that was searched.[1] Bone further claims that he asked his attorneys to go to the rental office to check the lease, which would have shown that Donald Bone, Sr., was the only name on the lease, thereby demonstrating that the FBI agent lied. (Doc. 105 at 4, 7, 16). Bone

---

[1] The agent actually testified that he spoke to the apartment complex manager who told him that Tamatha Bone lived in the apartment. The agent testified that it was his understanding that Ms. Bone was on the lease, but he did not testify that he actually saw the lease. (Doc 28 at 9).

8

argues that his attorneys failed to do this and this failure rose to the level of ineffective assistance of counsel.

Bone's argument is without merit. Even if Bone had shown that the lease was not signed by Bone's aunt, Tamatha Bone, the result of the suppression motion would not have been different. There is no dispute on the material facts that Tamatha Bone lived in the apartment, that she gave consent to search the apartment, that she had access to the entire apartment, and that her belongings were intermingled with Bone's in the bedroom that the agents searched. (Doc. 34). Thus, under the applicable standards, counsel were not ineffective for failing to investigate the names on the lease.

Next, Bone argues that the victim bank teller was lying when he testified that he placed a set of ATM keys in the bottom of the bank bag that Bone took when he robbed the bank. (Doc. 105 at 16). Bone states that he told his attorneys that the ATM keys actually came out of a car that Bone had found. (Doc. 105 at 16-17). However, even if this fact had been brought out at trial, it would not have changed the outcome of the case. The Government introduced undisputed evidence that Bone's fingerprints were on the notes used in the bank robbery and two eyewitnesses identified Bone as the robber. (Doc. 87 at 123, 140; Doc. 88 at 25, 50-51). Moreover,

9

to prove Bone's contention about the ATM keys, Bone would have had to testify, and Bone voluntarily made the decision not to testify. Thus, his attorneys could not have presented this evidence. (Doc. 89 at 10-11). Under the applicable standards, Bones's attorneys did not provide ineffective assistance of counsel on this issue.

Finally, Bone contends that his attorneys were ineffective for failing to present evidence at sentencing that Bone had performed a good deed while incarcerated in the Atlanta City Jail. (Doc. 105 at 17). Bone claims that he came to the aid of an officer who was attacked by another inmate. (Id.). Bone is correct that no such evidence was presented at sentencing. (Doc. 90). However, "an attorney is not ineffective for failing to raise every possible mitigating factor" at sentencing. Hernandez v. United States, Crim. No. 1:12-CV-0235-JEC-GGB, 2012 WL 6822055, at *3 (N.D. Ga. Dec. 17, 2012) (citing Chandler, 218 F.3d at 1314).

Counsel for Bone presented many mitigating arguments and evidence at Bone's sentencing hearing, including the statements of multiple character witnesses. (Doc. 90 at 2-12). Bone's counsel may strategically and logically have chosen not to bring out Bone's conduct at the jail because Bone's PSR reports that while Bone was in the Atlanta City Detention Center on federal charges, he set fire to his cell, was found with a homemade shank, stabbed a corrections officer in the back

10

with a pen, set fire to his clothes, and spit in the face of another corrections officer. (PSR at 11-12). Thus, under the applicable standards, Bone's attorneys did not provide ineffective assistance on this point.

## IV. CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. §2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## V. CONCLUSION

Based on the foregoing, **I RECOMMEND** that Movant's motion to vacate sentence [Doc. 105] be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 7th day of August, 2013.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE